IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT KNICKERBOCKER, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | )   Civil Action No. 1:20-cv-00505-BPG |
| | ) |
| AVEPOINT, INC., | ) |
| | ) |
| AVEPOINT PUBLIC SECTOR, INC. | ) |
| | ) |
|     Defendants. | ) |

## DECLARATION OF BRIAN BROWN

I, Brian Brown, declare as follows:

1.     I am over 18 years of age, suffer no legal disability and have personal knowledge of the facts stated herein.

2.     I am the Corporate Chief Operating Officer and General Counsel of Defendants AvePoint, Inc. ("API") and AvePoint Public Sector, Inc. ("APSI"), (together "AvePoint").

3.     API is a Delaware corporation headquartered in Richmond, Virginia. API is a leading provider of infrastructure management solutions for Microsoft® SharePoint® products and technologies.

4.     APSI is a Virginia corporation headquartered in Arlington, Virginia. APSI is a wholly owned subsidiary of API. APSI works extensively with customers in branches of the U.S. Armed Forces, Federal Civilian and Intelligence agencies, as well as State and Local Government to provide infrastructure management solutions for Microsoft® SharePoint® products and technologies.

5.     Plaintiff Robert Knickerbocker ("Knickerbocker") formerly was employed by APSI as a Senior Account Executive at its headquarters in Arlington, Virginia.

6.      On or about November 13, 2017, APSI hired and employed Knickerbocker as a Senior Account Executive at its headquarters in Arlington, Virginia.

7.      Throughout his employment with APSI, Knickerbocker worked for APSI at its headquarters in Arlington, Virginia.

8.      Throughout his employment with APSI, Knickerbocker's office was located at APSI's headquarters in Arlington, Virginia.

9.      During his employment with APSI, Knickerbocker agreed to the terms and conditions of and received payment of commissions under his 2019 Sales Representative Compensation Plan dated January 1, 2019 (the "Plan"). A copy of the Plan with Knickerbocker's signed Plan Acknowledgement Form dated February 14, 2019, is attached hereto as **Exhibit 1**.

10.     AvePoint published the Plan, received Knickerbocker's signed Plan Acknowledgement Form, and made eligibility determinations, calculations and commission payments under the Plan in Virginia.

11.     Section 5 of the Plan entitled "Termination" provides: "A sales representative will be paid commissions earned pursuant to Section 3 hereof through the last date of employment. This commission will be paid out as soon as practicable and in accordance with applicable law. **After the sales representative is separated from AvePoint, the sales representative will receive commission if the following conditions are met**: (1) **Product commission**: The **invoice is sent out/or payment is received** from the customer **within 5 business days** after the employee's separation date; (2) For **Services and Renewal commission**: the **payment is received within 5 business days** after the separation date; and (3) The opportunity is not considered bad debt. **A sales representative will not be entitled to any other additional commission at or following the date of separation**." **Exhibit 1** at p. 8 (Emphasis added).

12.     On or about August 7, 2019, APSI terminated Knickerbocker's at-will employment as a Senior Account Executive in Virginia.

13.     Pursuant to Section 5 of the Plan, Knickerbocker would only receive additional post-separation commissions if: (1) for "Product commission: The invoice is sent out/or payment is received from the customer within 5 business days after the employee's separation date;" (2) "For Services and Renewal commission: the payment is received within 5 business days after the separation date;" and (3) "the opportunity is not considered bad debt, and he otherwise "will not be entitled to any other additional compensation at or following the date of separation from AvePoint." **Exhibit 1** at p. 8.

14.     Because: (1) no additional invoices were sent out/or additional payments were received from the customers for Product commission; and (2) no additional payments were received for Services and Renewal commission by August 14, 2019 (within 5 business days after the termination of Knickerbocker's employment on August 7, 2019), Knickerbocker is not entitled to any additional commissions under the Plan. **Exhibit 1** at p. 8.

15.     Knickerbocker was paid correctly under the terms and conditions of the Plan. **Exhibit 1** at p. 8.

16.     Nevertheless, on February 26, 2020, Knickerbocker filed this lawsuit against AvePoint in the District of Maryland claiming that he is entitled to additional commissions under the Plan. Knickerbocker Complaint (Doc. 1) at ¶¶ 11, 26, 34.

17.     In addition to being contrary to the terms and conditions of the Plan and applicable law, Knickerbocker's claim that he is entitled to additional commissions under the Plan fails for yet another reason. Knickerbocker failed to follow Plan procedures and requirements.

18.     Section 1 of the Plan provides in pertinent part: "Any employee with questions or concerns about the calculation of commission should contact his/her immediate reporting manager. In the event the employee and the immediate manager are unable to resolve any concern regarding earned quota credit or a commission payment, employee may escalate the determination in writing to the Sales Compensation Committee ("SCC"), which shall in its sole determination hear and resolve any commission dispute.  Any concern or dispute regarding commission must be brought to the SCC in writing no later than 15 days following employee's notification of the applicable commission amount (the "Review Period").  **In the event no written objections are made within Review Period, employee shall be deemed to have waived any and all objections and the determination by AvePoint shall be deemed full and final**."  **Exhibit 1** at p. 2 (Emphasis added).

19.     Knickerbocker failed to contact his immediate reporting manager or the SCC.  The first time Knickerbocker raised any questions or concerns about the calculation of his commissions was in his demand letter dated September 10, 2019, which was 34 days after APSI terminated his employment.

20.     Because Knickerbocker failed to bring his concern or dispute regarding commissions to the SCC in writing within 15 days, he is barred from bringing any legal action, he has waived any and all objections, and AvePoint's determination is deemed full and final.

21.     Contrary to Knickerbocker's allegation in his Complaint that "this action arises from AvePoint transacting business in Maryland" (Doc. 1 at ¶ 5), this action arises out of and relates to AvePoint's conduct in Virginia.

22.     APSI hired and employed Knickerbocker in Virginia.  Knickerbocker worked for APSI in Virginia. Knickerbocker's office was located in Virginia. APSI received Knickerbocker's services and paid Knickerbocker's compensation in Virginia.  AvePoint published the Plan,

{2743192-2, 109110-00001-05}                        4

received Knickerbocker's signed Plan Acknowledgement Form, and made eligibility determinations, calculations and commission payments under the Plan in Virginia.   APSI terminated Knickerbocker's at-will employment in Virginia.   AvePoint determined that Knickerbocker was not entitled to any additional commissions under the Plan in Virginia. AvePoint received Knickerbocker's demand letters in Virginia.

23.     All of AvePoint's actions or omissions giving rise to this action occurred in Virginia.   Knickerbocker's claim does not arise out of or relate to any conduct by AvePoint in Maryland.

24.     The fact that Knickerbocker happens to reside in Maryland does not change the fact that this is a Virginia employment dispute over whether a former employee of a Virginia company who worked in Virginia is entitled to additional commissions under a Virginia Plan.   Irrespective of whether Knickerbocker has any meaningful contacts with Maryland, AvePoint does not have any such contacts with Maryland.

25.     AvePoint does not have any offices in Maryland.

26.     AvePoint does not own or lease any real estate or other property in Maryland.

27.     AvePoint does not have any bank accounts in Maryland.

28.     AvePoint does not have any telephone listings in Maryland.

29.     The "IRS Account" to which Knickerbocker refers in his Complaint (Doc. 1 at ¶¶ 13-15) is actually a services contract that APSI negotiated and entered into with Carahsoft Technology Corp. ("Carahsoft"), a company headquartered in Reston, Virginia.   This services contract covers remote services to be performed in Virginia, it is governed by Virginia law, and it has a Virginia choice of forum.   APSI has performed these remote services in Virginia pursuant to this services contract.

I declare under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated:  September 9, 2020

_____
Brian Brown



2019 SALES REPRESENTATIVE COMPENSATION PLAN

January 1, 2019

DocuSign Envelope ID: 2736C15F-C2F9-44E6-915A-A43EA755EA06

# SECTION 1

## INTRODUCTION

The Sales Representative Compensation Plan (the "Plan") applies to all sales employees of AvePoint, Inc. and its wholly-owned subsidiaries ("AvePoint") for the 2019 fiscal year and will be used as a guide for commission calculation. It is solely your responsibility as a sales representative to be familiar with the compensation plan and any changes or modifications adopted by AvePoint in the future. This document shall not apply retroactively to any past compensation year and shall supersede all previous compensation plans.  Any modification to the Plan must be made in writing and signed by the parties.

Since AvePoint's business and organization are subject to change, AvePoint reserves the right to change with or without notice all or any part of the commission and bonus policies at any time.  AvePoint will notify all employees who may be affected of these changes.  Changes will be effective on the dates determined by AvePoint, and after those dates all superseded policies will be null.

Sales representatives shall be given annual quota goals in January (or within 30 days of beginning employment in the case of new or transferring employees), which shall be monitored and measured on a monthly, quarterly and annual basis. Management shall be responsible for assigning quotas according to the role and territory. Any disagreements with, subsequent modifications to, and any final determinations as to quota goals or sales quota credit shall be made by the Sales Compensation Committee ("SCC") in its sole discretion. All modifications effecting a sales representative shall be signed by such sales representative to be valid.  This Plan is a commission program and participation does not imply a contract for employment.

Once the Plan is acknowledged and accepted (Section 7), commission shall be calculated and paid monthly in the pay period immediately following the month in which the commission is earned. For quota credit to be deemed earned and commission payable, the products and/or services sold must (i) constitute a legally binding and enforceable obligation of the customer to pay, (ii) be in the Closed-Invoiced status as shown in AvePoint's CRM system (currently Dynamics) during the Sales Year, and (iii) be in full compliance with any acceptance based terms in any applicable agreement. Final determination under (i) above as to whether a legally binding and enforceable obligation exists shall be made by AvePoint's General Counsel in his sole determination.  Final determination under (ii) above as to whether a legally binding and enforceable obligation exists shall be made by the SCC in its sole determination.  All commissions shall be subject to being repaid (a "claw back") in the event that at any time (i)-(iii) above are no longer valid, as determined by the SCC in its sole determination.  Determination of bad debt (Section 2.8) shall be made by the General Counsel in his sole determination. All sales quota credit and commission payments are subject to Reductions and Commission splits as more fully described and set forth herein.

Commissions shall be subject to a monthly average currency conversion rate which shall convert opportunity currency to quota currency for monthly commission calculations. The conversion rate shall be determined as of the date the opportunity entered as Closed-Booked into AvePoint's CRM.

Any employee with questions or concerns about the calculation of commission should contact his/her immediate reporting manager.  In the event the employee and the immediate manager are unable to resolve any concern regarding earned quota credit or a commission payment, employee may escalate the determination in writing to the SCC, which shall in its sole determination hear and resolve any commission dispute.  Any concern or dispute regarding commission must be brought to the SCC in writing no later than 15 days following employee's notification of the applicable commission amount (the "Review Period").  In the event no written objections are made within Review Period, employee shall be deemed to have waived any and all objections and the determination by AvePoint shall be deemed full and final.

2

SECTION 2

GENERAL DEFINITIONS

## 2.1 SALES YEAR

A sales representative's Sales Year, regardless of such employee's start date, shall be AvePoint's calendar year (January 1 through December 31).

## 2.2 REDUCTION

Reduction is the amount of contractual royalties and commissions AvePoint is required to pay to third party organizations ("Reduction"). Employee's commission shall be offset by any Reduction as validly set forth in CRM, unless otherwise determined by the SCC in its sole discretion.

## 2.3 SALES QUOTA CREDIT

For Sales Quota Credit to be deemed earned and commission payable, the products and/or services sold must (i) constitute legally binding and enforceable obligation of the customer to pay (ii) be in the Closed-Invoiced status as shown in AvePoint's CRM system (currently Dynamics) during the Sales Year, and (iii) be in full compliance with any acceptance based terms in any applicable agreement.  All Sales Quota Credit and commission payments are subject to Reductions and Commission Splits.

Except as set for in Section 2.5 or otherwise agreed by the SCC: (i) no quota credit will be given or commission paid for opportunities that do not meet the requirements set forth above for sales quota credit or commission payable for single or multiyear opportunities.   "Tax" and "Finance Charges" are not included in commission calculation and will not count towards Sales Quota Credit.

Sales Quota Credit is composed of different SKUs of Product, Services and Renewal.

- Product Quota Credit: Product SKUs of "Maintenance," and "Subscription";
- Services Quota Credit: Product SKUs of "Services";
- Renewal Quota Credit: Product SKUs of "Maintenance Renewal" and "Subscription Renewal."

Quota Credit for approved perpetual product license opportunities will be reviewed on a case by case basis by the SCC and commission will be paid out accordingly.  An approved perpetual license opportunity is one that is agreed upon by senior leadership upon achieving Stage 3 status.

## 2.4 SPLIT TRANSACTION

When an opportunity involves more than one sales representative or opportunity owner, all such sales representatives or opportunity owners must be identified in Dynamics. The Sales Quota Credit for the opportunity will be allocated to various parties with percentages which must sum up to 100%. All splits must be approved by a Sales VP (See Addendum A - Global Split Policy).

## 2.5 FUTURE YEAR OPPORTUNITY RECOGNITION

Multi-year deals up to 3 years will be recognized for commission calculation provided they meet the requirements of Section 2.3. Multi-year opportunities beyond 3 years, will not be considered for Sales Quota Credit or

DocuSign Envelope ID: 2736C15F-C2F9-44E6-915A-A43EA755EA06

Commission without approval from the SCC.  Notwithstanding the forgoing, multi-year public sector opportunities will be provided Sales Quota Credit and commission for the second and third year of the opportunity provided the first year of the deal meets all of the requirements for Sales Quota Credit.

## 2.6 ACCOUNT TRANSITION POLICY

At times, territories may be redefined by sales leadership and thus requires a transition of accounts and related opportunities from one sales person to another. The intent of this policy is to recognize and compensate fairly for sales effort that has gone into developing an account prior to transitioning that account to another sales team member (Please see Addendum B – Account Transition Policy).

## 2.7 MAINTENANCE RENEWALS SPLITS

For proper booking of renewals in CRM, there will be multiple sales team roles to distinguish how the sales person will get compensated. All 2019 renewals have been created in our Dynamics CRM system and corresponding owners have been added to the Sales Team section in CRM. For Enterprise Sales (and select Mid-Market Sales), the default role will be "Local Renewal Rep" on these opportunities and will be compensated accordingly.

When a subscription conversion or subscription renewal takes place, the value of the projected renewal amount should be booked using "Local Renewal Rep" role and this value will get paid as a renewal. Any value exceeding the projected renewal amount (due to upsell, true-ups, etc.) should be booked using your standard team role (e.g. Enterprise Rep or Mid-Market Rep).  This value will contribute towards your "New Product" quota attainment and will be compensated accordingly.

## 2.8 BAD DEBT

If the sales representative has been paid commission on a transaction where the product sale contains option year or the service is not exercised and/or later returned and/or labeled as bad debt (a payment received from a customer one hundred eighty (180) days or more after the invoice date and/or a credit is issued to the customer, the commission associated with that transaction will no longer be considered earned and no sales quota credit will be allocated from the opportunity. The commission previously paid on the opportunity will be subject to Claw Back and will be deducted from other commissions earned and payable in future period(s).

SECTION 3

COMPENSATION COMPONENTS

Each sales representative will be given a Variable Compensation Amount as their annual target.
Total Commission=Annual Variable Compensation + Flat Rate Commission + H1 Product Commission Accelerator

3.1 Rob Knickerbocker's Annual Variable Compensation Breakdown

| Commission Components | Calculation Status | Annual Quota – USD | Annual OTC - USD |
|---|---|---|---|
| | | **1,800,000** | **125,000** |
| Total Product | | 1,440,000 | 112,500 |
| Product - First Year | Closed-Invoiced | 576,000 | 39,375 |
| Product - First Year (Payment Received) | Payment Received | 576,000 | 39,375 |
| Product - Future Years (2&3) | First Year Opportunity Closed-Invoiced | 864,000 | 33,750 |
| Services | Payment Received | 360,000 | 12,500 |
| Maintenance/Subscription Renewal | Payment Received | 4% Flat Rate Commission | |

3.1.1 Product Commission:

First Year Product Commission Calculation – Upon Closed Invoiced

| Accumulative Achieved% | On – Target Variable Compensation | | | Accelerator | | |
|---|---|---|---|---|---|---|
| | 0-50% | 50.01%-80% | 80.01%-100% | 100.01 - 125% | 125.01 - 150% | 150%+ |
| Commission Rate | 4.10% | 7.98% | 11.96% | 7.52% | 8.20% | 8.89% |
| Commission (USD) | 11,812.50 | 13,781.25 | 13,781.25 | 10,828.13 | 11,812.50 | unlimited |
| Blended Rate% | 6.84% | | | | | |

First Year Product Commission Calculation – Upon Payment Received

| Accumulative Achieved% | On – Target Variable Compensation | | | Accelerator | | |
|---|---|---|---|---|---|---|
| | 0-50% | 50.01%-80% | 80.01%-100% | 100.01 - 125% | 125.01 - 150% | 150%+ |
| Commission Rate | 4.10% | 7.98% | 11.96% | 7.52% | 8.20% | 8.89% |
| Commission (USD) | 11,812.50 | 13,781.25 | 13,781.25 | 10,828.13 | 11,812.50 | unlimited |
| Blended Rate% | 6.84% | | | | | |

Future Year Product Commission Calculation – When First Year opportunity is Closed-Invoiced

| Accumulative Achieved% | On – Target Variable Compensation | | | Accelerator | | |
|---|---|---|---|---|---|---|
| | 0-50% | 50.01%-80% | 80.01%-100% | 100.01 - 125% | 125.01% - 150% | 150%+ |
| Commission Rate | 2.34% | 4.56% | 6.84% | 4.30% | 4.69% | 5.08% |
| Commission (USD) | 10,125.00 | 11,812.50 | 11,812.50 | 9,281.25 | 10,125.00 | unlimited |
| Blended Rate% | 3.91% | | | | | |

**Commission Accelerator:** Sales representatives have the opportunity to earn uncapped, accelerated commission. In order to hit product commission accelerators, the sales representative must achieve his/her services quota in a Closed - Booked capacity as such term is used and defined in AvePoint's CRM.  For purposes of this section only, "Closed-Booked" shall mean that the services (i) constitute legally binding and enforceable obligation of the customer to pay and (ii) legitimately be (as determined by the SCC in its sole discretion) in the "Closed-Booked" status as shown in AvePoint's CRM system (currently Dynamics) during the Sales Year.

**3.1.2 Services Commission:** Services commission will be calculated by opportunity and paid out when customer payment is received.

| Services Quota Credit | Services Commission Rate |
|---|---|
| USD 360,000 | 3.47% |
| >USD 360,000 | 4.47% |

**3.2 Flat-Rate Commission (Maintenance/Subscription Renewal):** Each sales representative will be given an opportunity to earn Flat-Rate Commission on Closed- Booked and Invoiced Maintenance/Subscription Renewal products, which is calculated and paid on a monthly basis upon first payment received.

The commission calculation is as follows:

| Flat-Rate Commission Type | Flat-Rate Commission Payout |
|---|---|
| 4% Maintenance/Subscription Renewal Commission (when the first payment is received) | The credit of maintenance/subscription renewal*4% |

**3.3 2019 H1 Product Commission Accelerator**

Each sales representative will be granted a commission accelerator for every Product opportunity closed in H1 2019.  The bonus percentages listed below will be applied to commission payment for opportunities in Closed-Invoiced status.

Please Note: This accelerator is only applied to First-Year & Future-Year Product related commission calculations. Product opportunities are defined by Product SKUs of Subscription, Maintenance, and approved perpetual licenses.  The accelerator will not be applied to Services and/or Maintenance/Subscription Renewals.

| Opp Closed-Invoiced Month | Product Commission Payment Bonus % |
|---|---|
| January & February | 10% |
| March | 8% |
| April | 6% |
| May | 4% |
| June | 2% |

SECTION 4

STOCK OPTION PROGRAM

Each salesperson who achieves his/her annual, fully-ramped quota (please see section 3.1), based on total Quota Credit on Closed - Invoiced opportunities during their Sales Year, will receive an option to purchase 500 shares of common stock at the value and vesting periods set by the Compensation Committee of the Board of Directors to be applicable to this program and according to other restrictions set forth in a participant's option award agreement and in accordance with AvePoint's Equity Incentive Plan.

All other aspects of the stock option will be subject to the terms and conditions of AvePoint's Equity Incentive Plan.

The options will be granted at AvePoint's next general granting date following the completion of the Sales Year. To receive the option grant, the salesperson must be an employee of the Company at the time of the grant.

For each increment of 50% achieved above the salesperson's annual quota, the salesperson will receive an additional 50% of the allocated options for achieving the quota.

DocuSign Envelope ID: 2736C15F-C2F9-44E6-915A-A43EA755EA06

## SECTION 5

## TERMINATION

A sales representative will be paid commissions earned pursuant to Section 3 hereof through the last date of employment. This commission will be paid out as soon as practicable and in accordance with applicable law. After the sales representative is separated from AvePoint, the sales representative will receive commission if the following conditions are met:

1) Product commission: The invoice is sent out/or payment is received from the customer within 5 business days after the employee's separation date;

2) For Services and Renewal commission: the payment is received within 5 business days after the separation date; and

3) The opportunity is not considered bad debt.

A sales representative will not be entitled to any other additional commission at or following the date of separation from AvePoint.

SECTION 6

SALES REPRESENTATIVE COMPENSATION PLAN ACKNOWLEDGMENT FORM

I, _____, hereby acknowledge receipt of the 2019 AvePoint Sales Representative Compensation Plan.  I have familiarized myself with the contents of the Plan and I agree to all the terms described herein. I understand that AvePoint expressly reserves all rights to amend, modify or rescind all or portions of this Plan or its policies at any time with 30 days advanced notice.

Rob Knickerbocker

I also understand that if I have questions, at any time, regarding the Sales Representative Compensation Plan, I will consult with my supervisor.

Please Note: Commission payments will be held until the Compensation Plan is accepted and the Acknowledgement Form is signed.

Employee Signature: _____

DocuSigned by: Rob Knickerbocker
—47B9D11D8A2E488...

Employee Printed Name: _____ Rob Knickerbocker

Date: _____ February 14, 2019 | 18:33 PST

DocuSign Envelope ID: 2736C15F-C2F9-44E6-915A-A43EA755EA06

Addendum A

Global Split Policy

AvePoint's split policy is intended to fairly compensate sales teams across the globe for the necessary sales effort that is required on sales opportunities where the selling and decision-making activities cross geographical borders or AvePoint assigned territories.

Home Territory is defined as the territory where the parent company or Independent Subsidiary is located, where decision makers are located and where purchasing and contractual decisions are made.

Independent Subsidiary is defined as an entity that operates independently from their parent company and makes their technology purchasing decisions independently from their parent and requires no corporate approval process nor any Master License or Services Agreement is leveraged globally.

For companies who only make purchasing decisions centrally (e.g. at their Home Territory location) (Home Territory Deals), Commissionable Revenue will be credited 100% to the sales team responsible for the deal, regardless of the location of the ultimate license deployment, provided there is no need for local sales support both during the initial sales cycle and post sales cycle for on-going selling, positioning and overall account management.

The sales management team which for purposes of this section shall be the VP/Country Managers may need and request global sales support assistance for Home Territory Deals both during the initial sales cycle and post sales cycle for ongoing selling, positioning, and overall account management. If global sales assistance is requested, the sales management team from the Home Territory will direct the sales activities as outlined in the documented Account Plan and/or Opportunity plan. These joint selling efforts must be documented within the plans and communicated to both the VPs/Country Managers and sales operations.

The following split policy will apply to these joint global selling efforts: 20% for contract negotiations and overall global account management to the Home Territory GAD and local region, 40% to the GAD and local region for corporate sales support efforts, 40% to the local SAE and local region for local sales support efforts. If there is no corporate sales support necessary and the deal is leveraging a Global Master Agreement or requires just Corporate Legal/Purchasing/sign off support by the Home Territory SAE or GAD, then the local AE and local region will receive 80%.

For Independent Subsidiary deals that are sold, negotiated, and procured within the Independent Subsidiary, Commissionable Revenue will be allocated 100% to the geographic sales team responsible for the deal. If the independent subsidiary is part of a corporation that is assigned to a GAD, the GAD must be informed and approve the designation of an independent subsidiary and all pricing/contractual terms will need to be approved as well by the GAD. Sales teams responsible for Independent Subsidiary accounts shall not grant any licenses or pricing that will extend to any parent company, or any other subsidiary or affiliate of the Independent Subsidiary (Related Accounts) without first consulting and obtaining prior written approval from the VP/Country Managers responsible for the Related Accounts.

Addendum B

<u>Account Transition Policy</u>

At times, territories may be redefined by sales leadership and thus requires a transition of accounts and related opportunities from one sales person to another. The intent of this policy is to recognize and compensate fairly for sales effort that has gone into developing an account prior to transitioning that account to another sales team member.

If an account has an opportunity that is at stage 0, 1, or 2 within the AvePoint CRM system (the validity of which will be determined by the SCC in its sole discretion), the account and opportunity will be transitioned immediately with the proper level of information to be shared and provided to the newly assigned sales representative for that account.

If the account has an opportunity that is at a stage of 3 or 4 within the AvePoint CRM system (the validity of which will be determined by the SCC in its sole discretion), the sales representative will have the opportunity to make the following decision within 2 days of being notified of the transition:

1) Keep the account through 3 months and upon closing the opportunity, he/she will receive 100% Sales Quota Credit and commission related thereto. If the opportunity does not close within 3 months, it will be transitioned immediately to the newly assigned sales representative and when or if the opportunity closes in the future, there will be no Sales Quota Credit or commission payable for the original sales representative.
2) Transition the account immediately and provide the appropriate level of support, transfer of knowledge and account introductions, and if the opportunity closes within 6 months, he/she will receive 50% Sales Quota Credit and commission related thereto. If the opportunity does not close within 6 months, there will be no Sales Quota Credit or commission payable for the original sales representative.

These stage 3 or 4 transition accounts and opportunities decisions must be documented by the respective VPs/Country Managers and communicated to the SCC and sales operations team.