**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|                              |   |                        |
|------------------------------|---|------------------------|
|                              | * |                        |
| ROBERT KNICKERBOCKER         |   |                        |
|                              | * |                        |
|    Plaintiff, |   | Civil No.: BPG-20-505  |
|                              | * |                        |
|    v.         |   |                        |
|                              | * |                        |
| AVEPOINT, INC., *et al*.     |   |                        |
|                              | * |                        |
|    Defendants |   |                        |
|                              | * |                        |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Currently pending before the court are Avepoint's Motion to Dismiss Knickerbocker's Complaint ("Motion") (ECF No. 14), Avepoint's Memorandum in Support of Motion to Dismiss (ECF No. 15), Plaintiff's Response Brief ("Opposition") (ECF No. 20),[1] and Avepoint's Reply in Support of Motion to Dismiss ("Reply") (ECF No. 21).  The issues are fully briefed, and no hearing is necessary.  Loc. R. 105.6.  For the reasons stated below, Avepoint's Motion to Dismiss Knickerbocker's Complaint (ECF No. 14) is denied.

## I.    <u>BACKGROUND</u>

Plaintiff, a resident of Maryland, was hired as a Senior Account Executive by defendant AvePoint Public Sector, Inc. ("APSI"), a Virginia company, on or about November 13, 2017. (ECF No. 15 at 3).  In addition to plaintiff's salary, plaintiff earned commissions when he secured contracts for defendants.  (ECF No. 20 at 2).  At the heart of this dispute is an APSI contract related

---

[1] For all future pleadings in this case, plaintiff should cite to legal authority in the text of the pleading, rather than in footnotes, as is customary in this court.

to the Internal Revenue Service ("IRS") office in New Carrollton, Maryland (the "IRS contract"). (Id. at 3).  Plaintiff contends that he secured the IRS contract for defendants in late 2018 for which, in addition to other contracts, he never received the appropriate commissions.  (Id.)  Defendants terminated plaintiff on or about August 7, 2019, and maintain that plaintiff is not entitled to any additional commissions.  (ECF No. 15 at 4-5).

On February 26, 2020, plaintiff filed his complaint in this court with two claims: Count I – Violation of the Maryland Wage Payment and Collection Law ("MWPCL"); and Count II – Unjust Enrichment.  (ECF No. 1).  Defendants move to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction; Federal Rule of Civil Procedure 12(b)(3) for improper venue; and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (ECF No. 13 at 1).

## II.   ANALYSIS

### A.  Personal Jurisdiction

Defendants argue that this court does not have personal jurisdiction given defendants' lack of connection to the forum.  (ECF No. 15, 13-15).  A challenge to personal jurisdiction under Rule 12(b)(2) "is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (quoting Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir.1993)).  "[W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge."  Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).  "In

considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id.

A court may exercise two types of jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017). In this case, plaintiff argues only that the court has specific jurisdiction over defendants, not general jurisdiction, in Maryland. (ECF No. 20 at 7 n.30). Specific jurisdiction arises when there is "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Id.; Carefirst of Maryland, Inc., 334 F.3d at 397. As in this case where defendants are nonresidents of Maryland, the federal district court may exercise specific jurisdiction only if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993) (citing Blue Ridge Bank v. Veribanc, Inc., 755 F.2d 371, 373 (4th Cir. 1985)).

**1. Maryland Long-Arm Statute**

"The Maryland courts have consistently held that the state's long-arm statute [Md. Code Ann., Courts & Jud. Proc. § 6–103] is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." Carefirst of Maryland, Inc., 334 F.3d at 396. The Maryland long-arm statute provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person, who directly or by an agent: (1) [t]ransacts any business or performs any character of work or service in the [s]tate." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1)-(2).

In this case, plaintiff has shown the requirements of the long-arm statute are met by the defendants' "transact[ing] any business or perform[ing] any character of work or service" in Maryland.  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).  Plaintiff asserts that work was performed by plaintiff on defendants' behalf in New Carrolton, Maryland at the IRS office ("New Carrollton office") related to the IRS contract at issue in this case.  (ECF No. 20 at 12).  Defendants counter that the contract in question was with a Virginia company and subject to Virginia law.  (ECF No. 15 at 10, 14-15).  Defendants do not contest that the New Carrollton, Maryland office of the IRS received defendants' services, but argue that the services were provided remotely from Virginia.  (Id.)  Plaintiff also provided proof of his work on behalf of defendants at the New Carrollton office through multiple affidavits.  Stephen Dvoranchik, an IRS contractor at the New Carrollton office, stated that plaintiff "attended numerous in-person meetings" during contract negotiations for the IRS contract and after defendants were awarded the IRS contract.  (ECF No. 20-1).  Plaintiff also affirms that he regularly traveled to the New Carrollton office in connection with the IRS contract.  (ECF No. 20-2).

Although the initial contract for the services performed at the New Carrollton office may have occurred in Virginia, the court concludes that the meetings conducted and the work performed at the New Carrollton office, as detailed in plaintiff's affidavits, fall within the long-arm statute's definition of "transact[ing] any business or perform[ing] any character of work or service."  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).  Indeed, "the location of any contract formation leading to the transaction of business is irrelevant because 'the statutory test [of transacting any business] may be satisfied by a showing of other purposeful acts performed by the [defendant] in this [s]tate in relation to the contract, albeit preliminary or subsequent to its execution.'" Hausfield

v. Love Funding Corp., 16 F. Supp. 3d 591, 599 (D. Md. 2014) (quoting Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 209 N.E.2d 68, 75 (N.Y. 1965)).

In concluding that the Maryland long-arm statute confers jurisdiction over the defendants, the court found the reasoning in Hausfield to be instructive.  In Hausfield, the plaintiff worked for the Washington, D.C.-based defendant but closed loans in Maryland and attended one meeting in Maryland.  Hausfield, 16 F. Supp. 3d at 598.  This court found that the plaintiff had sufficiently alleged a relationship between his claims and acts that occurred in Maryland to survive defendant's motion to dismiss.  Id. at 600.  The same holds true in the instant case.  Plaintiff sufficiently alleges a relationship between his claims and acts that occurred in Maryland and, accordingly, has met his burden to prove by a prima facie showing that the Maryland long-arm statute is satisfied.  Combs, 886 F.2d at 676.

### 2.  Due Process

In addition to satisfying the long-arm statute, a court may only exercise jurisdiction over a nonresident defendant "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst of Maryland, Inc., 334 F.3d at 397 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  The Fourth Circuit has noted three relevant considerations in determining if these due process requirements have been met: "'(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

Regarding the first consideration, the extent to which defendants "purposefully avail[ed]" themselves of the privilege of conducting activities in Maryland, the Fourth Circuit lists a set of "non-exhaustive factors to consider." Hausfield, 16 F. Supp. at 600.  In relevant part, these factors include "whether [defendants] deliberately engaged in significant or long-term business activities in the forum state" and "whether the performance of contractual duties was to occur within the forum." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).  In this case, plaintiff signed his employment contract with defendants at his home in Maryland, completed work for defendants from his home in Maryland, and attended meetings regarding defendants' work at the New Carrollton office.  (ECF No. 20 at 17).  Defendants argue that plaintiff did not have permission to work from home and that plaintiff's employment contract was sent to plaintiff's work email, which defendants assumed plaintiff would open and sign at defendants' office in Virginia, and that the IRS contract is a contract with a Virginia company.  (ECF No. 15 at 10).  In considering a jurisdictional challenge, however, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff." Combs, 886 F.2d at 676.  Applying that standard here, the court concludes that, on the facts presented, defendants "deliberately engaged in significant and long-term business activities" in Maryland and "the performance of contractual duties was to occur" in Maryland. Consulting Eng'rs Corp., 561 F.3d at 278.  Therefore, plaintiff has sufficiently alleged that defendants "purposefully avail[ed]" themselves of the privilege of conducting activities in Maryland.

The second consideration focuses on "whether the plaintiff['s] claims arise out of those activities directed at the [s]tate." ALS Scan, Inc., 293 F.3d at 712.  That consideration is present here in that plaintiff's claims relate to the commissions plaintiff argues he is owed in part from

work he performed on the contract with the IRS in New Carrollton, Maryland.  (ECF No. 20 at 18).

Lastly, the third consideration requires that the exercise of personal jurisdiction "be constitutionally 'reasonable.'"  ALS Scan, Inc., 293 F.3d at 712.  To determine this, the court will look to factors such as:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Consulting Eng'rs. 561 F.3d at 279.  An application of those factors to this case establishes that the exercise of personal jurisdiction over defendants would "be constitutionally 'reasonable.'" ALS Scan, Inc., 293 F.3d at 712.

First, it is not especially burdensome for defendants to litigate in this forum; as plaintiff points out, defendants' headquarters are only approximately 45 miles from this court.  (ECF No. 20 at 19).  Given that plaintiff's claims, in part, are related to work performed on the IRS contract in Maryland, this court has an interest in adjudicating the dispute.  Hausfield, 16 F. Supp. at 603 ("Maryland . . . has an interest in the resolution of grievances involving transactions that took place in Maryland.").  Plaintiff, as a resident of Maryland, has an interest in obtaining relief in this jurisdiction.  As to the fourth and fifth factors, both Maryland and Virginia have a shared interest in obtaining efficient resolution of disputes and furthering substantive social policies.  Contrary to defendants' assertion, the test is not which is the best forum, but rather whether requiring defendants to defend their interests in this forum is constitutionally reasonable.  That test has been satisfied here in that none of the factors weigh heavily in defendants' favor.

In sum, plaintiff has satisfied both that the Maryland long-arm statute confers jurisdiction and that the assertion of jurisdiction here is consistent with constitutional due process.  Nichols v. G.D. Searle & Co., 991 F.2d at 1199.  Accordingly, defendants' motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is denied.

### B.  Venue

Defendants next argue that plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) because venue is improper in this court.  (ECF No. 15 at 15).  "In this circuit, when venue is challenged by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper," although all inferences must be drawn in favor of the plaintiff.  Jones v. Koons Automotive, Inc., 752 F. Supp. 2d 670, 679-80 (D. Md. 2010) (citing Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE, 216 F. Supp. 2d 468, 471 (D. Md. 2002)). Pursuant to 28 U.S.C. § 1391(b), venue is proper, in relevant part, if the claim is filed in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).   "This [c]ourt has previously noted that a 'substantial part of the events,' as used in 1391(b)(2), does not mean 'a majority of the events.'"  Coastal Lab'ys, Inc. v. Jolly, No. RDB-20-2227, 2020 WL 6874332, at *11 (D. Md. Nov. 23, 2020) (quoting Seidel v. Kirby, 296 F. Supp. 3d 745, 751-52 (D. Md. 2017)).

As discussed above, plaintiff has offered evidence that plaintiff conducted work on defendants' behalf, negotiating and securing the IRS contract at the New Carrollton office, and that plaintiff's claims in this case relate directly to the IRS contract on which plaintiff performed work in Maryland.  (ECF Nos. 20-1, 20-2).  In addition, plaintiff asserts that he worked remotely on defendants' behalf from his home in Maryland.  (ECF No. 20 at 17).  Although defendants cite

to events such as plaintiff's hire and termination in Virginia (ECF No. 15 at 16) in support of their position that venue in Virginia is appropriate, "the question is not whether Maryland is the *best* venue." (ECF No. 20 at 18) (emphasis in original).  Rather, venue is proper if a substantial part of events occurred in the chosen forum.  See 28 U.S.C. § 1391(b)(2).  Here, drawing all inferences in favor of plaintiff, plaintiff has met his burden of establishing that venue is proper in Maryland.  Accordingly, defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3) is denied.

### C. **Failure to State a Claim**

Defendants' third and final argument is that plaintiff's complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is "to test the legal sufficiency of a complaint."  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  When ruling on such a motion, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor."  Id. at 244.  Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Rather, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Pursuant to Federal Rule of Civil Procedure Rule 12(d), a motion to dismiss for failure to state a claim upon which relief can be granted is converted into a motion for summary judgment

if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). "Matters—such as exhibits—are outside the pleadings if a complaint's factual allegations are not expressly linked to and dependent upon such matters." Williams v. Branker, 462 F. App'x 348, 352 (4th Cir. 2012). Courts may "consider documents that are explicitly incorporated into the complaint by reference," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)), or submitted by the movant, "so long as the document was integral to the complaint and there is no dispute about the document's authenticity." Id. "Considering such documents does not convert a motion to dismiss to one for summary judgment." Id. (citing Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015)).

Here, in their Rule 12(b)(6) arguments, the parties reference the "2019 Sales Representative Compensation Plan" ("the Plan") (ECF No. 14-1) signed by plaintiff. (ECF No. 15 at 18, 22; ECF No. 20 at 23; ECF No. 21 at 17-18). Plaintiff's complaint specifically identifies and discusses the Plan. (ECF No. 1 ¶ 11). Plaintiff's claims, and defendants' arguments, revolve around this Plan and whether plaintiff was properly compensated under the Plan. The parties do not dispute the Plan's authenticity. Therefore, the court may consider the Plan given that it is integral to plaintiff's complaint.

Defendants also attach the affidavits of Brian Brown (ECF No. 14-1) and Taylor Davenport (ECF No. 21-2), both employees of defendants. "[A] court generally cannot consider the substance of an affidavit submitted in connection with a 12(b)(6) motion without converting the motion into one for summary judgment." Theune v. U.S. Bank, N.A., No. MJG-13-1015, 2013 WL 5934114, at *3 (D. Md. Nov. 1, 2013); see also Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, (4th Cir. 1991) ("Had the district court accepted and *considered* the affidavits relevant to the 12(b)(6)

motion, the motion to dismiss for failure to state a claim would have been converted to a motion for summary judgment.").  In this case, defendants cite to the affidavits of both Brian Brown and Taylor Davenport in their Rule 12(b)(6) failure to state a claim argument.[2]  (ECF No. 15 at 19, 22; ECF No. 21 at 16-19).  The court concludes that defendants' affidavits are not integral to plaintiff's complaint and, therefore, will not be considered in the context of this Rule 12(b)(6) motion.

Defendants move to dismiss both counts of the complaint for failure to state a claim pursuant to Rule 12(b)(6).

### 1.  Maryland Wage Payment & Collection Law

Defendants make two arguments regarding plaintiff's Maryland Wage Payment & Collection Law ("MWPCL") claim set forth in Count I of the complaint: 1) the commissions at issue do not constitute wages; and 2) plaintiff was properly compensated for commissions earned according to the Plan.  As to the first argument, defendants maintain that the commissions plaintiff argues he should have received were not wages, but instead voluntary incentive payments, because plaintiff already received a base salary to sell and market defendants' products and services.  (ECF No. 15 at 20).  In response, plaintiff asserts that these commissions were integrated into plaintiff's total compensation package and, therefore, constitute wages.  (ECF No. 20 at 22-23).

The MWPCL requires that an "employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment."  Md. Code Ann., Lab. & Empl. § 3-505(a).  The MWPCL's definition of wages includes commissions, the type of payment at issue in this case.  Id. § 3-501(c)(2)(ii).  The Maryland Court of Appeals has stated that "the forms of renumeration listed (including commissions) [in the MWPCL] must have in fact been

---

[2] Although plaintiff attached two affidavits to his Opposition (ECF Nos. 20-1, 20-2), he did not cite to either of these affidavits in his Rule 12(b)(6) argument.

'promised for service' to constitute wages under the law." <u>Martignetti v. Int'l Bus. Machs., Inc.</u>, No. RDB-18-2431, 2019 WL 4750334, at *4 (D. Md. Sept. 30, 2019) (quoting <u>Whiting-Turner Contracting Co. v. Fitzpatrick</u>, 366 Md. 295, 305, 783 A.2d 667, 672 (2001)).  On the other hand, under the "bright line test" outlined in <u>Whiting-Turner Contracting Co.</u>, "a bonus offer made to the . . . employee which fell outside of his compensation package did not constitute 'wages.'" <u>Martignetti</u>, 2019 WL 4750334, at *4.  In this case, the commissions in question were part of plaintiff's overall compensation package and were detailed as such in Section 3 of the Plan.  (ECF No. 14-1 at 11-12).

Defendants rely on the <u>Martignetti</u> case, in which all of the plaintiff's claims were premised on the allegation that the defendant made a promise to pay him a certain amount of commissions but failed to keep that promise.  The court concluded that the plaintiff's MWPCL claim failed because the defendant "retained absolute discretion to modify the Plan, review and adjust payments, or cancel the Plan entirely." <u>Martignetti</u>, 2019 WL 4750334, at *4, *7.  Further, the plan in <u>Martignetti</u> provided: "The [incentive plan] does not constitute an express or implied contract or promise by IBM to make any distributions under it," language which the court found "indicates that the commission payments were not 'promised for service' as wages under the MWPCL must be." <u>Id.</u> at *2, *5.  The Plan at issue here does not contain the language which was critical to the reasoning of the <u>Martignetti</u> court.  In this case, the Plan provides that defendants "expressly reserve[] all rights to amend, modify or rescind all or portions of this Plan or its policies at any time with 30 days advanced notice."  (ECF No. 14-1 at 15).  The Plan makes no mention of the lack of any express or implied contract or promise, the language relied upon in <u>Martignetti</u>. Therefore, the court does not find the reasoning in <u>Martignetti</u> to be instructive in this case.

Here, plaintiff's MWPCL claim seeks the payment of commissions that are alleged to be a part of his overall compensation plan which, if proven, would constitute wages.  As noted, the court must accept all of plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor.  Edwards, 178 F.3d at 243.  Under these circumstances, the court rejects defendants' argument that plaintiff's MWPCL claim fails because the commissions at issue are not wages, and concludes that plaintiff states a plausible claim for relief.

Defendants' second argument regarding plaintiff's MWPCL claim is that plaintiff failed to meet the requirements under which a terminated employee can collect outstanding commissions pursuant to Section 5 of the Plan.  (ECF No. 15 at 18-19).  Section 5 of the Plan provides that a terminated employee will receive commissions on invoices sent or payment received within five days of the employee's termination, depending on the type of contract in question. (ECF No. 14-1 at 14).  Plaintiff argues that Section 5 of the Plan is void under the MWPCL because it prevents terminated employees from being paid their earned wages and, instead, conditions payment on the actions of third parties to send invoices or payments.  (ECF No. 20 at 25).  Contrary to defendants' arguments, the Maryland Court of Appeals has held that the MWPCL requires commissions to be paid if they have been earned by the employee prior to termination despite language to the contrary in employment contracts.  Medex v. McCabe, 372 Md. 28, 39, 811 A.2d 297, 304 (2002).  In this case, plaintiff maintains that the requirements set forth in Section 5 of the Plan do not control because he completed the work required to earn the commissions prior to his termination.  (ECF No. 20 at 25).  Accordingly, plaintiff's MWPCL claim contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### 2. Unjust Enrichment

Defendants argue that Count II of the complaint, plaintiff's unjust enrichment claim, fails to state a claim.  Defendants appear to largely reiterate their arguments regarding plaintiff's MWPCL claim, and fail to specifically address the elements of a claim for unjust enrichment. (ECF No. 15 at 21-23; ECF No. 21 at 19).  Under Maryland law,[3] "an unjust enrichment claim requires a plaintiff to establish that: (1) the defendant conferred a benefit upon the plaintiff; (2) the defendant appreciated or knew of the benefit; and (3) the defendant accepted or retained the benefit 'under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.'"  State Construction Corp. v. Sloane Associates, Inc., 385 F. Supp. 3d 449, 467 (D. Md. 2019) (quoting Mohiuddin v. Doctors Billing & Management Sols., Inc., 196 Md. App. 439, 467, 9 A.3d 859, 865 (Md. Ct. Spec. App. 2010)).

In this case, plaintiff argues that he secured contracts on behalf of defendants, including the IRS contract, and did not receive commissions for these contracts as required per the Plan. (ECF No. 20 at 27).  The complaint asserts that defendants were aware that plaintiff did the work in question, defendants benefitted from that work, and that it would be inequitable for defendants not to pay commissions due to plaintiff.  (ECF No. 1 at 3, 5).  Accepting plaintiff's allegations as true, and drawing all reasonable factual references in plaintiff's favor, the court concludes that plaintiff has stated a cause of action for unjust enrichment.  Therefore, defendants' motion to dismiss plaintiff's complaint for failure to state a claim is denied.

---

[3] Because the court's jurisdiction over this matter is based on diversity of citizenship, the court must apply Maryland law to issues of substantive law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

III.    **<u>CONCLUSION</u>**

For the foregoing reasons, Avepoint's Motion to Dismiss Knickerbocker's Complaint (ECF No. 14) is DENIED.  A separate order will be issued.


March 11, 2021                                     _____/s/_____
                                                              Beth P. Gesner
                                                              Chief United States Magistrate Judge